IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KAREEM ARMSTRONG, | ) | Case No. 3:19-cv-141 |
| | ) | |
| Plaintiff | ) | |
| v. | ) | RICHARD A. LANZILLO |
| | ) | UNITED STATES MAGISTRATE JUDGE |
| | ) | |
| CAPTAIN JOSEPH FURMAN and | ) | |
| JOSEPH DUPONT, | ) | MEMORANDUM OPINION AND ORDER |
| | ) | ON PLAINTIFF'S MOTION FOR |
| Defendants | ) | SUMMARY JUDGMENT [ECF NO. 16] |
| | ) | AND DEFENDANTS' MOTION FOR |
| | ) | SUMMARY JUDGMENT [ECF NO. 29] |

MEMORANDUM OPINION

I.    Introduction

Plaintiff Kareem Armstrong initiated this action in the Somerset County, Pennsylvania, Court of Common Pleas.  Defendants, Joseph Furman and Joseph Dupont, removed the case to this Court on August 29, 2019.  ECF No. 1.  In the operative amended complaint, filed on September 18, 2019, Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, alleging that, during his incarceration at the State Correctional Institution at Somerset (SCI-Somerset), Defendants violated his rights as secured by the First Amendment to the United States Constitution.  ECF No. 3.

The parties have filed cross motions for summary judgment.  ECF Nos. 16 and 29.  The motions have been fully briefed and are ripe for disposition.[1]  For the reasons discussed below, the Court will grant Defendants' motion as to Defendant Dumont and enter judgment in his favor, deny Defendants' motion as to Defendant Furman, and deny Plaintiff's motion in its entirety.

---

[1] The Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331.  All parties have consented to proceed before a United States Magistrate Judge in this matter.  ECF Nos. 2, 8.  *See also* 28 U.S.C. § 636(c)(1); Federal Rule of Civil Procedure 73.

II.     Standard of Review

Federal Rule of Civil Procedure 56(a) requires a court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Id.* at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

In determining whether a genuine issue of material fact remains for trial, the court must consider the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). To defeat a properly supported motion for summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings but must identify evidence that demonstrates the existence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Furthermore, the party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). The moving party may also rely upon the absence of evidence to support an essential element of the opposing party's claim as a basis

for the entry of summary judgment because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. *See also Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).

III.    Material Facts

The parties largely agree on the relevant facts.[2]  On December 16, 2019, Corrections Officers conducted an investigative cell search of the cell that Plaintiff shared with inmate Spencer. ECF No. 31 ¶ 8.  During that search, the officers recovered contraband from Spencer's sweat shorts that was determined to be Suboxone. *Id.* ¶¶ 9, 11.  Spencer was taken to the Restricted Housing Unit ("RHU"). *Id.* ¶ 10.

On December 23, 2018, Plaintiff submitted Grievance No. 778381 in which he claimed that his Super 3 radio had been confiscated during the December 16, 2019 search. *Id.* ¶ 13. Defendant Joseph Furman, the intelligence captain at SCI-Somerset, interviewed the officers involved in the search and both denied confiscating the radio. *Id.* ¶¶ 2, 14.  Furman also determined that no "confiscated items" receipt had been issued for the radio. *Id.* ¶ 14.

On December 28, 2018, the mailroom at SCI-Somerset received a letter marked "Return to Sender, Vacant, Unable to Forward." *Id.* ¶ 16.  It was determined that Plaintiff sent this letter to Michael Armstrong at the address of 328 Lepper Street, Lodeville TN 37097. *Id.* ¶ 16.  A review

---

[2]  These facts are taken from Defendants' Statement of Material Facts not in Dispute filed in support of their motion for summary judgment.  ECF No. 31.  Plaintiff did not file a response to this statement of facts.  Under this Court's Local Rules, these facts are deemed to be admitted unless they are specifically denied or otherwise controverted by a separate concise statement of the opposing party.  L.Cv.R. 56.E.  However, in determining whether genuine issues of material fact exist in this case, the Court has considered a separate Statement of Undisputed Material Facts filed by Plaintiff in support of his motion for summary judgment.  ECF No. 15.  This Statement lists five factual assertions and cites specific paragraphs of Plaintiff's Amended Complaint in support of each. *Id.*  Plaintiff's Amended Complaint is a verified pleading.  ECF No. 3.  Accordingly, the Court has treated it as an affidavit and considered its factual assertions to the extent they are based on Plaintiff's personal knowledge and cited in Plaintiff's Statement of Undisputed Material Facts. *See Mobley v. Wetzel*, 2017 WL 3404977, at *2 (M.D. Pa. June 5, 2017), report and recommendation adopted, 2017 WL 3394246 (M.D. Pa. Aug. 8, 2017) (citing *Reese v. Sparks*, 760 F.2d 64, 67 (3d Cir. 1985) (treating verified complaint as an affidavit in opposition to a motion for summary judgment). *See also Wright v. Schick*, 2020 WL 1083857, at *6 (W.D. Pa. Mar. 6, 2020). Any conflict between Plaintiff's Statement and Defendants' Statement is noted.

of DOC records revealed that while Plaintiff has no relatives living in Tennessee, Spencer is from Lodeville, Tennessee. *Id.* Per DOC policy, all returned mail is opened and screened by mailroom and security staff. *Id.* ¶ 18. It was determined that this letter was written by Plaintiff and that it was Plaintiff's intention to have this letter returned to SCI-Somerset and delivered to Spencer. *Id.* ¶¶ 19-20. In the letter, Plaintiff stated that he had sold his Super 3 "for a strip and fifty dollar." *Id.* ¶ 21. In his Statement of Undisputed Material Facts, Plaintiff acknowledges that he authored the letter. ECF No. 15 ¶ 1 ("While sitting in defendant Furman (sic) office defendant Furman showed plaintiff his personal mail from 12/28/18…").

After reviewing this letter and in light of his investigation, Furman did not believe that Plaintiff's radio had been confiscated and he believed that Plaintiff may have been in possession of contraband and/or drugs. ECF No. 31 ¶ 22. On January 25, 2019, Furman met with Plaintiff in the Security Office to discuss Plaintiff's grievance. *Id.* ¶ 23. At this meeting, Furman explained that if he answered the grievance using the letter in support of his response, he would have to issue Plaintiff a misconduct. *Id.* ¶ 25; ECF No. 15 ¶ 1. According to Defendants, Furman indicated that he would not pursue any issues related to the letter if Plaintiff agreed to withdraw his grievance. ECF No. 31 ¶ 24. Plaintiff remembers Furman's proposal during the meeting as coming in the form of a threat. According to Plaintiff, Furman told him, "if you make me respond this grievance, I will give you a misconduct and you will lose your parole." ECF No. 15 ¶ 1. Plaintiff then signed a Grievance Withdrawal form on which Furman wrote "No further action with be taken on the inmate utilizing the attached letter," referencing the Michael Armstrong letter. ECF No. 31 ¶ 27; ECF No. 15 ¶ 2.

On January 29, 2019, Furman was told that Plaintiff was not withdrawing the grievance. ECF No. 31 ¶ 28.[3]  On January 30, 2019, Furman issued an Initial Review Response to Plaintiff's grievance, denying it and attaching the Michael Armstrong letter. *Id.* ¶ 29.

On January 31, 2019, Furman issued Misconduct Report No. B984337, charging Plaintiff with various charges related to possession of drugs, possession of contraband, unauthorized use of mail and lying to an employee. *Id.*  As a result of the issuance of the misconduct, Plaintiff was transferred to the RHU. *Id.* ¶ 31.  Defendant Joseph Dupont was the hearing examiner at Plaintiff's February 6, 2019 hearing on the misconduct. *Id.* ¶ 32.  Dupont found Plaintiff guilty of the charges outlined in the misconduct report and imposed a sanction of 60 days in disciplinary custody for each charge, to be served concurrently. *Id.* ¶¶ 33-34.

In this action, Plaintiff brings a claim of retaliation against Furman and a claim of failure to intervene against Dupont.  ECF No. 3 at 4-6.[4]  Plaintiff requests relief in the form of: (1) dismissal of Misconduct No. B984337 from his prison record; (2) declaratory judgment; (3) punitive damages; (4) nominal damages; (5) costs of litigation; and (6) any other appropriate relief. *Id.* at 6-7.  Both Defendants are sued in their individual and official capacities. *Id.* at 2.

---

[3]  DOC policy requires that an inmate's intent to withdraw a grievance be confirmed by the inmate's counselor.  ECF No. 31 at 5 n.2.  Plaintiff's counselor confirmed that he was not withdrawing the grievance on the Grievance Withdrawal Form.  ECF No. 32-1 ¶ 27.

[4]  In his Motion for Summary Judgment, Plaintiff also seeks judgment on a claim of defamation against Furman.  ECF No. 16 at 11-13.  Plaintiff did not assert a defamation claim in the operative amended complaint and the Court denied his subsequent motion for leave to amend the amended complaint to add a claim of defamation.  ECF No. 19.

IV.     Analysis

A.      Retaliation

Plaintiff seeks summary judgment on his claim against Furman for retaliation, asserting that Furman issued the misconduct charges against him in retaliation for his refusal to withdraw his grievance.[5]  ECF No. 16 at 4-8.  To prevail on his illegal retaliation claim, Plaintiff must prove that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to take the adverse action.  *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016) (citing *Rauser* v. *Horn*, 241 F.3d 330, 333-34 (3d Cir. 2001)).  An "adverse action" is one that would "deter a person of ordinary firmness" from exercising his First Amendment rights.  *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000) (quoting *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000)).  To establish the requisite causal link between his protected conduct and the adverse action taken against him, Plaintiff is not required to show that his protected conduct was the sole motivation for the adverse action.  *Williams v. Clark*, 2020 U.S. Dist. LEXIS 1952, at *13 (W.D. Pa. Jan. 7, 2020).  A causal link is established when the protected conduct "was a substantial or motivating factor in the decision to discipline [a plaintiff]."  *Carter v. McGrady*, 292 F.3d 152, 158 (3d Cir. 2002).

Defendants concede that Plaintiff's use of the inmate grievance system constitutes protected activity and that the issuance of the misconduct and the resulting sanction therefor constitute an adverse action.  They assert, however, that Plaintiff cannot show the requisite causal connection between his protected activity and Furman's initiation of the misconduct charges.  ECF

---

[5]  Eleventh Amendment sovereign immunity shields Defendants, as Commonwealth employees, from suit in their official capacities in this case.  *Brown v. Smith*, 2019 U.S. Dist. LEXIS 95879, at *17 (W.D. Pa. June 7, 2019).  The claims will be considered as against Defendants in their individual capacities only.

No. 30 at 6-7.  Specifically, Defendants argue that, despite Furman's initiation of the misconduct charges immediately following Plaintiff's decision not to withdraw his grievance, the record does not show that Plaintiff's grievance was a substantial or motivating factor in Furman's decision to discipline him.  *Id.* at 7.  Defendants reason that although "the misconduct was issued after Plaintiff decided not to withdraw his grievance, it is clear from the record that Furman was aware of the information which supported the misconduct charges prior to that point and that Furman would have pursued those charges but for Plaintiff's agreement to withdraw the grievance."  *Id.*

Defendants appear to be arguing that Furman's decision to pursue the misconduct charges against Plaintiff was motivated by Plaintiff's withdrawal from the agreement to resolve both matters, not Plaintiff's refusal to discontinue the grievance itself.  In other words, Defendants contend that Furman formed the intent to file the misconduct charges independent of Plaintiff's grievance, but he was willing to forego doing so based upon Plaintiff's agreement to discontinue his grievance.  Plaintiff's unilateral withdrawal from this agreement, in turn, prompted Furman to pursue his original, intended course of action.  Defendants' position does not contest Plaintiff's right to withdraw from the agreement but posits that his decision to do so removed Furman's justification for not proceeding with the misconduct charges as he originally intended.  Thus, Defendants see Plaintiff's withdrawal from the agreement as having restored the parties to the same posture they occupied before the agreement.  Defendants regard any other result as rewarding Plaintiff for his "gamesmanship" in the face of Furman's good faith effort to resolve both the grievance and the misconduct charges.[6]  ECF No. 30 at 7, 8.

---

[6] The logic of Defendants' position is further illustrated by considering a slightly different sequence of events.  Had Furman initiated the misconduct charges before entering into the agreement to resolve those charges and Plaintiff's grievance, followed by Plaintiff's withdrawal from the agreement, Plaintiff would be unable to argue that his continued pursuit of his grievance motivated Furman's initiation of the charges.  As to Furman's "motivation" for proceeding with the misconduct charges, Defendants' argument sees no difference between this hypothetical sequence and the actual sequence of events in this case.  Both scenarios have Furman pursuing the misconduct charges against Plaintiff based upon his withdrawal from the agreement rather than the continuation of his grievance.

In contrast, Plaintiff sees no distinction between his withdrawal from the agreement and his refusal to discontinue his grievance. Plaintiff argues that but for his refusal to discontinue his grievance, Furman would not have proceeded with the misconduct charges. Notwithstanding the attractive simplicity of this position, the Court finds that the distinction posited by Defendants is a meaningful one. If, as Defendants assert, Furman viewed the parties' agreement essentially as transactional and proceeded with the misconduct charges solely based on Plaintiff's withdrawal from that agreement, the continuation of the grievance cannot be considered Furman's motivation for proceeding with the misconduct charges.

On the other hand, the Court cannot ignore the timing of Furman's action or Plaintiff's factual assertion that his initial agreement to withdraw his grievance was induced by a threat. *See* ECF No. 15 ¶ 1. Furman initiated the charges against Plaintiff immediately after he refused to withdraw the grievance. In addition, the coercive nature of the statement Plaintiff attributes to Furman ("if you make me respond to this grievance, I will give you a misconduct and you will lose your parole.") not only undercuts Defendants' transactional characterization of events, but arguably itself represents an act of retaliation. Given these conflicting facts and possible inferences, Furman's motivation for initiating the misconduct charges remains a factual issue that the Court cannot resolve on this record. The relevant law does not require that the protected conduct be the sole factor in the decision to discipline in order to find retaliation, only that the protected conduct is a substantial or motivating factor in the decision. *Carter*, 292 F.3d at 158. "The motive or absence of motive of a party to engage in conduct alleged by another party is relevant to determining whether a genuine issue of fact exists." *Matsushita*, 475 U.S. at 596. Here, the record is far from clear regarding Furman's motivation for his action. Based on the evidence, a reasonable jury could find in favor of Plaintiff or Furman on the issue of retaliatory motive. It

is not the province of the court to weigh this evidence, or assess credibility, when passing upon the parties' cross-motions for summary judgment. Rather, in adjudicating each motion, the court must view the evidence presented in the light most favorable to the opposing party, *Anderson*, 477 U.S. at 255, and draw all reasonable inferences in the light most favorable to the opposing party. *Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). This standard precludes the Court from adopting either party's interpretation of the evidence on the issue of retaliatory motive.

However, the relevant inquiry does not end here. As the United States Court of Appeals for the Third Circuit has held, "once a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Rauser*, 241 F.3d at 334. This is often referred to as the "same decision" defense. *Watson*, 834 F.3d at 422. Defendants bear the burden of proof on this defense. "Once a prisoner has made his prima facie case, the burden shifts to the defendant to prove by a preponderance of the evidence that it 'would have made the same decision absent the protected conduct for reasons reasonably related to penological interest.'" *Carter*, 292 F.3d at 158 (quoting *Rauser*, 241 F.3d at 333) (parenthetical omitted). In determining whether the record establishes the defense in this case, the Court will assume Plaintiff has established a prima facie retaliation claim.

Defendants argue that Plaintiff's withdrawal from the agreement eliminated Furman's reason for foregoing the initiation of misconduct charges, and legitimate penological interests supported Furman's decision to proceed with them given the strength of the evidence supporting Plaintiff's guilt. Indeed, the record discloses that the Hearing Examiner found Plaintiff guilty on

each of the misconduct charges.[7]  Defendants' argument posits that, once Plaintiff withdrew from the agreement, Furman was free to make the "same decision" to discipline Plaintiff that he would have made had the agreement never existed.  The problem with this argument is that it ignores Plaintiff's assertion that he was initially coerced to agree to withdraw the grievance.  Thus, this case raises a concern very similar to the one expressed by Judge Ambro in his concurring opinion in *Watson*.  To illustrate his concern regarding how certain courts had expressed and applied the "same decision" defense, Judge Ambro offered the following hypothetical:

> Imagine a guard tells an inmate accused of misconduct that he never would have been charged if he had not filed a complaint against prison officials. The inmate admits to the misconduct but argues that the retaliatory enforcement is nonetheless unlawful. Can the guard, having conceded that the outcome would have been different without the complaint, still take advantage of something we call the "same decision" defense?  If we are to give any meaning to the name of the defense, the answer must be "no."

*Watson*, 834 F.3d at 426-27.

Viewing the evidence in the light most favorable to Plaintiff and allowing him all reasonable inferences that may be drawn from that evidence, the Court cannot say as a matter of law that Furman was motivated solely by Plaintiff's withdrawal from a voluntary agreement and that Furman proceeded to make the same decision to charge Plaintiff with the misconduct he intended from the outset.  Accordingly, neither Furman nor Plaintiff is entitled to summary judgment on Plaintiff's retaliation claim.

---

[7] As Judge Hardiman noted in his dissent in *Watson*, evidence of misconduct as weighty as the evidence against Plaintiff would foreclose a retaliation claim under the holdings of other Circuits.  *Watson*, 834 F.3d at 426.  Judge Hardiman cited, for example, the Eighth Circuit's view that a retaliation claim in this context is precluded so long as the misconduct is supported by "some evidence."  *Id.* (citing *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994)).  *See also Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (retaliation claim foreclosed because "there is no dispute that [the plaintiff] committed the most serious, if not all, of the prohibited conducted charged.") (internal quotation marks omitted); *O'Bryant v. Finch*, 637 F.3d 1207, 1215 (11th Cir. 2011) ("[A]n inmate cannot state a claim of retaliation for a disciplinary charge involving a prison rule infraction when the inmate was found guilty of the actual behavior underlying that charge after being afforded adequate due process.").  Judge Hardiman noted that the Third Circuit's "only precedential foray into this area acknowledges that a 'clear and overt' violation of prison regulations could potentially preclude a genuine dispute of material fact on the same-decision defense."  *Id.* (citing *Carter*, 292 F.3d at 159).

B.      Failure to Intervene

Plaintiff also seeks summary judgment on his claim against Dupont for failure to intervene, asserting that Dupont had a realistic and reasonable opportunity to intervene and prevent Furman's alleged retaliation against Plaintiff, but failed to do so.  ECF No. 16 at 8-11.  Defendants seek summary judgment on this claim, arguing, *inter alia*, that no court in the Third Circuit has found that a claim for failure to intervene claim to stop a First Amendment violation exists.  ECF No. 30 at 9.

The United States Court of Appeals for the Third Circuit recently addressed the viability of a similar failure-to-intervene claim in the context of qualified immunity.  In *Weimer v. County of Fayette*, 2020 U.S. App. LEXIS 26967 (3d Cir. Aug. 25, 2020), the Court addressed whether qualified immunity existed for a claim that a defendant failed to intervene to stop investigatory conduct by police that violated the plaintiff's constitutional rights.  The Court held:

> Under the now-familiar standard for the judge-created defense of qualified immunity, a state officer is shielded from a suit for monetary damages under § 1983 unless "the official violated a . . . constitutional right," and "the right was clearly established at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011) (internal quotation marks and citation omitted).  "[A] defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that [s]he was violating it." *Plumhoff v. Rickard*, 572 U.S. 765, 778-79, 134 S. Ct. 2012, 188 L. Ed. 2d 1056 (2014).  That is, the legal rule must have been "dictated by controlling authority or a robust consensus of cases of persuasive authority." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589-90, 199 L. Ed. 2d 453 (2018) (internal quotation marks and citation omitted).  The Supreme Court has repeatedly emphasized that "clearly established law should not be defined at a high level of generality." *White v. Pauly*, 137 S. Ct. 548, 552, 196 L. Ed. 2d 463 (2017) (per curiam) (internal quotation marks omitted). "A rule is too general if the unlawfulness of the [official's] conduct does not follow immediately from the conclusion that the rule was firmly established." *Wesby*, 138 S. Ct. at 590 (alteration, internal quotation marks, and citation omitted).
>
> . . .

It is well established in our Circuit that both police and corrections officers must "take reasonable steps to protect a victim from another officer's use of excessive force." *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002); *see also Baker v. Monroe Twp.*, 50 F.3d 1186, 1193-94 (3d Cir. 1995). But we have not extended this duty to prosecutors who fail to intervene to prevent police from conducting unconstitutional investigations. Accordingly, we cannot say that "any reasonable [prosecutor]" investigating [the victim's] murder would have understood that she was violating [the plaintiff's] constitutional rights in failing to intervene to prevent improper investigatory conduct by police. *See Plumhoff*, 572 U.S. at 778-79. Put differently, the facts here are simply too dissimilar from those in the excessive force cases for us to hold that those cases would have put [the defendant prosecutor] on notice that her actions were unlawful.

. . .

Whatever might be said of the investigation, the question here is whether [the plaintiff] had a clearly established right to have [the defendant] take reasonable steps to protect her from an unconstitutional police investigation. The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality." *al-Kidd*, 563 U.S. at 742. … [T]here was no clearly established law at the time of [the defendant's] allegedly violative conduct that would have placed the constitutional question she confronted — to intervene in the police investigation or not to intervene — "beyond debate." *See Plumhoff*, 572 U.S. at 779 (citation omitted).

*Weimer v. County of Fayette*, 2020 U.S. App. LEXIS 26967, at *24-29.

As the Third Circuit made clear in *Weimer*, because it has not extended the duty to intervene beyond situations involving excessive force, in cases where the facts are dissimilar from those in the excessive force cases, those excessive force cases cannot be used to put defendants on notice that their actions were unlawful. In this case, the facts are markedly dissimilar to those in excessive force cases. There was no use of excessive force or similar threat to Plaintiff's physical safety. Accordingly, Dupont was not on notice that his failure to intervene in Furman's alleged retaliation against Plaintiff and cannot be said to have violated a clearly established right. Thus, Dupont has qualified immunity on the instant the failure-to-intervene claim.[8]

---

[8] This Court is entitled to address the defense of qualified immunity *sua sponte* when appropriate. *See Doe v. Delie*, 257 F.3d 309 (3d Cir. 2001) (affirming *sua sponte* recommendation of qualified immunity by United States Magistrate Judge); *see also* 28 U.S.C.§ 1915(e)(2)(B) (under the Prisoner Litigation Reform Act ("PLRA"), the court shall

V.          Conclusion

For the reasons discussed herein, the following order is entered:


ORDER

AND NOW, this 16th day of September, 2020, IT IS HEREBY ORDERED that Plaintiff's

Motion for Summary Judgment, ECF No. 16, is DENIED.  IT IS FURTHER ORDERED that

Defendants' Motion for Summary Judgment, ECF No. 29, is GRANTED, in part, and DENIED,

in part.  Defendants' motion is GRANTED as to Plaintiff's claim against Defendant Joseph Dupont

and DENIED as to Plaintiff's claim against Defendant Joseph Furman.  An appropriate judgment

will be entered in favor of Defendant Dupont.


RICHARD A. LANZILLO
United States Magistrate Judge

---

evaluate the defendants' immunity "at any time."). The Court notes that Defendants raised the defense of qualified
immunity in their Answer. ECF No. 4 at 6.